UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN LEGAL CENTER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-cv-1187 (TSC) |
| U.S. Department of Justice, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Campaign Legal Center (CLC) has sued the U.S. Department of Justice (DOJ), seeking to compel responses to its February 2, 2018 Freedom of Information Act (FOIA) request. DOJ has moved for summary judgment (ECF No. 12, Def. MSJ), and CLC has cross-moved for summary judgment (ECF No. 15, Pl. MSJ). For the reasons set forth below, the court will deny DOJ's motion for summary judgment and grant CLC's cross-motion for summary judgment.[1]

### I. BACKGROUND

Wilbur Ross became Secretary of the Department of Commerce on February 28, 2017. Roughly two months later, he emailed a subordinate, Earl Comstock, stating: "I am mystified why nothing have [sic] been done in response to my months old request that we include the citizenship question. Why not?" (ECF No. 15-5, 5/2/17 Email at 2.) Ross was referring to his request to add a

---

[1] Due to overlapping facts and claims between this case and another case before this court, *Campaign Legal Center v. DOJ*, No. 18-cv-1771, portions of this opinion are identical to language in the summary judgment opinion in that case.

1

question about citizenship status to the 2020 Census Questionnaire. Comstock replied the same day: "I agree Mr. Secretary . . . We need to work with Justice to get them to request that citizenship be added back as a census question, and we have the court cases to illustrate that DoJ has a legitimate need for the question to be included. I will arrange a meeting with DoJ staff this week to discuss." (5/2/17 Email at 2.)

Secretary Ross followed up that August: "where is the DoJ in their analysis? If they still have not come to a conclusion please let me know your contact person and I will call the AG." (ECF No. 15-6, Pl. Exh. 5 at 2.) A month later, on Friday September 8, 2017, Comstock sent Secretary Ross a memo stating:

> I spoke several times with James McHenry [DOJ] by phone, and after considering the matter further James said that Justice staff did not want to raise the question . . . James directed me to Gene Hamilton at the Department of Homeland Security. Gene and I had several phone calls to discuss the matter, and then Gene relayed that after discussion DHS really felt [] it was best handled by the Department of Justice. At that point the conversation ceased and I asked James Uthmeier [OGC at Commerce] to look into the legal issues and how Commerce could add the question to the Census itself.

(ECF No. 15-7, Pl. Exh. 6, at 2). The record indicates that Secretary Ross contacted then-Attorney General Jeff Sessions that same Friday, because the following Monday, Arthur Gary, the General Counsel for DOJ's Justice Management Division, emailed John Gore, a Deputy Assistant Attorney General: "[Assistant Attorney General for Administration] Lee Lofthus has asked me to reach out to you to find out if you and/or [the Civil Rights Division] have any background information regarding some concerns raised that the Secretary of Commerce raised last week with the AG relating to the 2020 Census. I understand the concerns relate to potential questions relating to citizenship . . ." (ECF No. 19-2, Pl. Exh. A, at 6.)

The record further suggests that Attorney General Sessions quickly agreed to request the citizenship question. Later that week, Gore connected via email a DOJ employee and a Department of Commerce employee to coordinate a call between Sessions and Ross. (ECF No. 15-8, Pl. Exh. 7,

at 2.) In the correspondence preceding the call, the DOJ employee wrote: "[f]rom what John [Gore] told me, it sounds like we can do whatever you all need us to do and the delay was due to a miscommunication. The AG is eager to assist." (*Id.*) A call between Sessions and Ross occurred that day—September 17, 2017. (*Id.*) With the Attorney General on board, the drafting process commenced, including the following steps:

- *November 1, 2017*: Gore emailed Chris Herren (Voting Section Chief) asking for comments and edits on a draft letter. (Pl. Exh. A at 57.)
- *November 3, 2:05 p.m.*: Herren responded: "some comments from me are included in the attached." (*Id.*)
- *November 3, 5:10 p.m.*: Gore emailed Gary: "the draft letter that we discussed earlier this week is attached. Let's touch base early next week once you've had a chance to review it." (*Id.* at 13.)
- *November 3, 5:35 p.m.*: Bethany Pickett (Civil Rights Division) emailed Gore: "I've attached the letter that we discussed yesterday. I would be happy to discuss this further. Please let me know if you have any questions regarding my comments and edits." (*Id.* at 56.)
- *November 22*: Gary replied to Gore with a revised draft. (*Id.* at 14.)
- *November 25*: Gore replied, writing that he "found a few nits." (*Id.* at 17.)
- *November 27, 12:43 p.m.*: Gore emailed Rachael Tucker and Robert Troester (both at DOJ): "Attached please find the near-final draft of the letter to Census." (*Id.* at 66.)
- *November 27, 1:25 p.m.*: Gore emailed Gary: "[a] couple more nits in the attached." (*Id.* at 20.)
- *November 30, 4:21 p.m.*: Gore emailed Gary: "I have received some nits back from the leadership offices, which are reflected in the attached redline and clean versions." (*Id.* at 24.)
- *December 8, 3:14 p.m.*: Tucker emailed Gore: "I'm working to review this quickly. Will be back in touch shortly." (*Id.* at 64.)
- *December 8, 3:57 p.m.*: Gore emailed Gary: "Attached is a redline of the letter with leadership's final changes. With these changes, we are authorized to send." (*Id.* at 34.)

With the letter complete, Gary mailed and faxed it (the "Gary Letter") to Dr. Ron Jarmin of the U.S. Census Bureau on December 12, 2017. (*Id.* at 39.) In March 2018, Secretary Ross announced Commerce's intention to add the citizenship question, writing that "[f]ollowing receipt

of the DOJ request, I set out to take a hard look at the request and ensure that I considered all facts and data relevant to the question . . ." (ECF No. 15-2, Pl. Exh. 1, at 2.)

In June of that year, Secretary Ross clarified, in a supplemental memorandum, that he had had the idea before DOJ's request, and that he had in fact asked DOJ to make the request: "my staff and I consulted with Federal government components and inquired whether [DOJ] would support, and if so would request, inclusion of a citizenship question as consistent with and useful for enforcement of the Voting Rights Act." (ECF No. 15-4, Pl. Exh. 3, at 2.)  This supplemental memorandum indicates that not only did Commerce ask DOJ to make the request, it further supplied DOJ with the rationale for the request. (*Id*.)  By the time Attorney General Sessions agreed to make the request, all DOJ had to do was draft and send it.

On February 1, 2018 CLC submitted a FOIA request to the DOJ's Civil Rights Division (CRT) seeking "all records pertaining to Arthur Gary's December 12, 2017 request to the Census Bureau to add a Citizenship question to the 2020 Census Questionnaire." (ECF No. 12-3, FOIA Request at 3.)  CLC asked DOJ to search for "[a]ny documents to, from, or mentioning Dr. Ron Jarmin or Dr. Enrique Lamas" and to use eight search terms: "2020 Census", "long form", "citizenship question", "question regarding citizenship", "ACS", "American Community Survey", "citizen voting age population", and "CVAP." (*Id*.)

DOJ acknowledged receipt on February 9, 2018 and granted the request for expedited treatment. (*Id.* ¶ 3.)  After conducting an initial search, DOJ denied CLC access to all responsive documents on February 28, 2018. (*Id.* ¶ 9.)  CLC filed this action on May 21, 2018. (ECF No. 1.)  DOJ then conducted an additional search and on September 26, 2018 released 59 pages in full or in part, while also withholding 43 pages of responsive documents in full under Exemptions 5 and 6. (Cooper Decl. ¶ 11).  On November 19, 2018 DOJ released an additional 11 pages. (ECF No. 19-1, Supp. Cooper Decl. ¶ 12.)

At this point, two issues remain. CLC contests (1) the adequacy of DOJ's search, and (2) DOJ's use of Exemption 5 to redact 20 pages and withhold 43 pages.

## II.      LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895. Courts must view "the evidence in the light most favorable to the non-movant[ ] and draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor. *Lopez v. Council on Am.–Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

### B. FOIA

FOIA cases are typically decided on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). "FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Wash. (CREW) v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). Federal agencies must comply with requests and make their records available to the public unless such "information

is exempted under [one of nine] clearly delineated statutory [exemptions]." *CREW*, 602 F. Supp. 2d at 123; *see also* 5 U.S.C. §§ 552(a)–(b). Summary judgment for the agency is only appropriate when an agency proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

In cases challenging the applicability of certain FOIA exemptions, the district court conducts a *de novo* review of the agency's decision to withhold requested documents under any of FOIA's specific exemptions. *See id*; 5 U.S.C. § 552(a)(4)(B). The burden is on the agency to show that nondisclosed, requested material falls within a stated exemption. *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)). Agencies may rely on supporting declarations that are reasonably detailed and non-conclusory. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987) ("affidavits cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."). The declarations must provide enough information "to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Id.* at 218. "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). A motion for summary judgment should be granted in favor of the FOIA requester, however, where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1433).

In cases where the adequacy of a search is at issue, the agency "must show beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The court employs a reasonableness test to determine whether an agency's search for responsive materials is adequate. *Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017) (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). However, "evidence that relevant records have not been released may shed light on whether the agency's search was indeed adequate." *Weisberg*, 705 F.2d at 1351. The court must accord agency affidavits "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). "It is well-established" however "that a conclusory affidavit that gives 'no detail as to the scope of the examination . . . is insufficient as a matter of law' in demonstrating the adequacy of the search." *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 87 (D.D.C. 2007) (quoting *Weisberg v. U.S. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980)).

### III.   ANALYSIS

Although "a motion for summary judgment cannot be 'conceded' for want of opposition," *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016), "[t]his does not mean . . . that the Court must assess the legal sufficiency of each and every [claim] invoked by the government in a FOIA case." *Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017). Instead,

> [w]here the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact specific documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction.

*Id; see Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, the court will address only CLC's arguments in response to DOJ's motion for summary judgment.

**A. <u>Adequacy of the Search</u>**

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Weisberg,* 705 F.2d at 1351; *see Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). CLC requested "all records pertaining" to the Gary letter, and as noted above, it recommended eight search terms. (Cooper Decl. ¶ 2.)

DOJ searched for responsive documents in the Voting Section and at the Office of the Assistant Attorney General (OAAG). (Supp. Cooper Decl. ¶¶ 4, 6.) Senior staff in the Voting Section determined that all responsive records would be found in Chris Herren's Outlook account; Herren searched his account and located responsive documents. (*Id.* ¶ 4.) At the OAAG, the Director of Operational Management determined that Gore "was the only OAAG employee who had a substantive role in the preparation of the Gary letter." (*Id*. ¶ 7.) Gore's Outlook account was first searched using the term "census," and later searched for emails on which Gary and Pickett were addressees. (*Id.* ¶ 9).

None of these searches used any of CLC's eight suggested search terms. DOJ argues that two of the eight terms are too general, but does not address the other six. (ECF No. 19, Def. Reply at 5; Supp. Cooper Decl. ¶ 11.) This court is mindful that an agency has discretion in how it conducts a FOIA search, and that "[i]n general, a FOIA petitioner cannot dictate the search terms

for his or her FOIA request." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015). But an agency's discretion "is not boundless; the search terms selected must pass muster under a standard of reasonableness." *Coffey v. Bureau of Land Management,* 249 F. Supp. 3d 488, 498 (D.D.C. 2017) (internal quotes omitted). DOJ's use of a single search term for all the digital records does not pass muster under that standard. It is likely that responsive digital documents exist which do not have the word "census" in them. Thus, because only one search term was used, and that term was inadequate, the search was not "reasonably calculated to uncover all relevant documents." *Weisberg,* 705 F.2d at 1351. As to this issue, the court will grant summary judgment for CLC.

### B. Exemption 5

CLC challenges DOJ's invocation of Exemption 5 to redact 20 pages and withhold 43 pages. (Pl. MSJ at 18–26; ECF No. 20 at 9–14.) Exemption 5 shields documents that would "normally [be] privileged from discovery in civil litigation against the agency," including documents protected by the attorney-client, work-product, and deliberative process privileges. *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). To withhold a document under Exemption 5, the "document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt-Nielsen Transp. Grp. Ltd. v. U.S.,* 534 F.3d 728, 733 (D.C. Cir. 2008) (citations and internal quotation marks omitted). There is no dispute that the first condition is met here; the parties' dispute is directed to the second condition.

DOJ argues that the requested materials fall under the deliberative process privilege, which protects materials that are "predecisional" and "deliberative." *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1537 (D.C. Cir. 1993). This case turns on the first requirement—that the withheld materials be predecisional. Documents are predecisional if they were "prepared in order to assist an agency

9

decisionmaker in arriving at his decision, rather than to support a decision already made." *Petroleum Info. Corp.*, 976 F.2d at 1434 (citations and internal quotation marks omitted). Here, the contested documents consist of 11 drafts of the letter from Gary to Dr. Ron Jarmin as well as redactions from 20 pages of related emails. (ECF No. 12-2 at ¶ 13.)

CLC argues that none of the documents are predecisional because they were created after Commerce decided to add the citizenship question to the Census and after DOJ decided to issue the letter requesting that question. (Pl. MSJ at 21–22.) Defendant does not dispute this timeline, but argues that the documents are predecisional because they were created before the letter was finalized. (Def. Reply at 6–7.) The parties thus agree on the sequence of events, but disagree about what constitutes the relevant agency decision: the decision to write the letter, or the decision about the letter's final contents.

The inquiry can be circular. Indeed, every draft postdates the decision to write it, *and* simultaneously predates the decision of what to include in it. Such is the case here: the drafting process postdated Attorney General Session's decision to issue the letter, but undeniably predated the decision about the final contents of the letter. In this regard, Plaintiff and Defendant are both right: the disputed materials are predecisional, but they are also postdecisional. The ultimate question is what constitutes the relevant decision for Exemption 5.

As Wright & Miller have observed, "[d]efining 'decision' for purposes of the privilege is no easy task." 26A Charles Alan Wright et al., Fed. Practice & Procedure § 5680 (1st ed. 1992). Though there is no well-established test for identifying the relevant decision, cases in this Circuit do provide some guidance. First, they suggest that the relevant decision in any given case is one that involves discretion about what an agency position or agency policy should be.[2] The D.C. Circuit

---

[2] This does not mean that a relevant agency decision *must* involve a formal policy. *See Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135-36

has held, for example, that documents did not fall under Exemption 5 because they "were not suggestions or recommendations as to what *agency policy* should be." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (emphasis added).  The Court later elaborated on this principle:

> To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment . . . [W]hen material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable.
>
>  *Petroleum Info. Corp.*, 976 F.2d at 1435 (D.C. Cir. 1992).

Consistent with this language, this Circuit has held that drafts showing the exercise of "agency policy-oriented judgment" are in fact predecisional.  *See Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 39 (D.C. Cir. 2002).  In *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1565 (D.C. Cir. 1987), the D.C. Circuit withheld a preliminary draft of a historical work published by the Air Force about operations in South Vietnam between 1961 and 1964.  The drafting process involved decisions about the agency's historical conclusions and representations to the public.  *Id.* at 1566.  In *Radiation Sterilizers*, *Inc. v. U.S. Dep't of Energy*, No. 90-880, 1991 U.S. Dist. LEXIS 4669 (D.D.C. Apr. 9, 1991), the Court withheld documents from a drafting process that determined what data and conclusions should be included in an interim report to Congress about a chemical leak.  Likewise, in *Brown v. Dept. of State*, 317 F. Supp. 3d 370, 370

---

(D.D.C. 2011) ("even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.") (citing *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

(D.D.C. 2018), the court withheld documents produced in preparation for court filings and for a letter to Congress.

The facts of this case are significantly different. The letter at issue did not involve discretion about an agency position or about the primary reasons for the agency position. The agency's position and the reasons for the letter had already been decided. Thus, the drafting did not demonstrate "the process by which policy is formulated," nor could it "reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment." *Petroleum Info. Corp.*, 976 F.2d at 1434 (D.C. Cir. 1992).

Moreover, Gary and Gore were not drafting the document so that a supervisor or colleague could decide a particular issue. In *Coastal States*, the D.C. Circuit held that "a document from a subordinate to a superior official is more likely to be predecisional." 617 F.2d at 868. This is because such documents generally aid in the decisionmaking process about an agency's position. Thus, in *Access Reports v. Dep't of Justice*, the D.C. Circuit upheld withholding a document that a low-level employee created for supervisors who had asked for research on a particular issue. 926 F.2d 1192, 1196-97 (D.C. Cir. 1991). Such documents are quintessentially predecisional—they are created to help the agency make a decision. *See Krikorian v. Dept. of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (withholding a document from subordinates to supervisors that proposed two options for how to respond to public inquiries about a recent agency decision regarding a genocide); *United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 44 (D.D.C. 2008) (withholding investigative notes that were provided to an office to assist it in writing a report to employees about identity theft against the agency); *Blank Rome LLP v. Dep't of the Air Force*, No. 15-cv-1200 (RCL), 2016 U.S.

Dist. LEXIS 128209, at *14, *35 (D.D.C. Sept. 20, 2016) (withholding draft documents that assisted the Air Force in coming to a decision regarding a settlement proposal).

Here, the contested documents do not fit that mold. They were not used to help the agency make a decision, but rather were used to communicate the decision.[3] If the materials in question were drafts of documents that Gore and Gary prepared for Attorney General Sessions before he decided to request the citizenship question, they would be squarely predecisional. But that was not their purpose. While Gore did email the draft to supervisors before it was sent to the Census Bureau, it is telling that in the email he wrote that he was sending them a "near-final" draft. (Def. Exh. A at 66.) In other words, the draft was not provided to supervisors to help them make a decision. The decision had already been made, and the supervisors were reviewing Gore's implementation of it. (*See id.*)

The court is mindful of the D.C. Circuit's directive that Exemption 5 should be construed narrowly. "In light of the FOIA's strong policy in favor of disclosure . . . Exemption 5 is to be construed as narrowly as consistent with efficient Government operation." *Petroleum Info. Corp.*, 976 F.2d at 1434 (internal quotations omitted); *see also Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 773 (D.C. Cir 1988). Consequently, the court finds that the relevant decision for purposes of Exemption 5 is the one made by Attorney General Sessions to request the citizenship question, not the decision about the final contents of the letter. The emails sent and the drafts

---

[3] Decisions about how to message agency policy to the public can be predecisional. *See Hooker v. HHS*, 887 F. Supp. 2d. 40, 40 (D.D.C. 2012) (withholding drafts of a publication about vaccine safety); *Hunton & Williams LLP v. U.S. EPA*, Civ. A. No. 15-1203, 2018 U.S. Dist. LEXIS 166174 at *9 (D.D.C. Sept. 27, 2018) (withholding drafts of letters to non-profits and emails discussing communications strategy); *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 20 (D.D.C. 2004) (withholding documents related to the agency's response to a congressional inquiry.) In fact, a court recently held that the contested documents in this case constituted "messaging." *See New York v. U.S. Dep't of Commerce*, Civ. A. No. 18-2921, 2018 U.S. Dist. LEXIS 1772468 at *20 (S.D.N.Y. Oct. 5, 2018). These cases are inapplicable here because DOJ concedes that the withheld materials are not messaging documents. (Def. Reply at 15 n.3.)

written after that decision are thus not predecisional and cannot be withheld under Exemption 5. Because the documents are not predecisional, the court need not decide whether they are deliberative.

## IV.     CONCLUSION

Because DOJ's search was inadequate and the withheld materials are not protected by Exemption 5, Defendant's motion for summary judgment will be DENIED and CLC's cross-motion for summary judgment will be GRANTED.  A corresponding Order will follow shortly.

Date:  June 1, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge